UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

STEVEN FLEMING,

                              Plaintiff,

v.

UNKNOWN MCMAHON et al.,

                              Defendants.

_____/

Case No. 2:20-cv-88

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.      Factual allegations

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.  The events about which he complains, however, occurred at the Marquette Branch Prison (MBP) in

Marquette, Marquette County, Michigan.  Plaintiff sues MBP Correctional Officers Unknown McMahon and Unknown Ogle, MBP Hearing Investigator Pamela Basal, and MDOC Hearing Officers S. Morris and Thomas O. Mohrman.

Plaintiff alleges that, on May 16, 2018, Defendant McMahon wrote a major misconduct charge against him for possession of a weapon and destruction or misuse of state property.  Defendant Basal conducted a hearing investigation, which included taking a written statement from Plaintiff and soliciting questions from Plaintiff.  Plaintiff wrote a statement and posed a number of questions to be asked of various witnesses:  Correctional Officer Baldini, the former occupant of Plaintiff's cell, maintenance personnel, and prisoner Peoples.  In his statement, Plaintiff denied throwing the small piece of metal found by Defendant McMahon; he contended that he was just throwing out junk that he found in his cell when he arrived.  Defendant Basal concluded that the questions Plaintiff asked were not relevant to the misconduct.  Plaintiff also asked for information about any other prisoners charged with possession of a weapon or destruction or misuse of state property. That question also was deemed irrelevant.

Defendant Mohrman conducted a misconduct hearing on May 23, 2018.  Defendant Mohrman found that, based on a review of the evidence, Plaintiff had removed a sprinkler head, taken the deflectors off, and thrown one of the deflectors toward the shower area.  Based on the definition of a weapon in the policy, the metal deflectors were deemed weapons because they could be used or altered to be used as a weapon.  Defendant Mohrman sanctioned Plaintiff to 30 days' loss of privileges and ordered restitution in the amount of $119.63, the cost of replacing a sprinkler head.  (Misconduct Hr'g Rep. I, ECF No. 1-10, PageID.19-20.)

After seeking rehearing, Plaintiff appealed his misconduct conviction to the 30th Circuit Court.  On December 27, 2018, the circuit court judge remanded the case for a new hearing, because the MDOC had failed to comply with the order to file a certified copy of the agency record. (30th Cir. Ct. Ord., ECF No. 1-5, PageID.14.)

On June 26, 2019, Defendant Hearing Officer Morris conducted a new hearing on the misconduct charge.  Defendant Morris issued an extensive decision, carefully evaluating the evidence and Plaintiff's defense.  Plaintiff expressly contended that Defendant McMahon had fabricated a cell-inspection checklist at 10:00 a.m., before Plaintiff was placed in the cell, that showed among other things that that the sprinkler head in Plaintiff's cell was in good condition. (Cell-Inspection Checklist, ECF No. 1-11, PageID.21.)  Plaintiff also claimed that McMahon issued the misconduct charge in retaliation for Plaintiff having argued with McMahon about being placed in the dirty cell.  Defendant Morris found Plaintiff guilty of the misconduct charges and rejected Plaintiff's claim that Defendant McMahon had fabricated the cell-inventory sheet. (Misconduct Hr'g Rep. II, ECF No. 1-15, PageID.24-25.)

Plaintiff contends that Defendants violated his right to due process in multiple ways.  He contends that Defendant McMahon violated due process by fabricating evidence to support the misconduct charge, that Defendant Basal failed to properly investigate the charge, and that Defendants Mohrman and Morris improperly found Plaintiff guilty.  Plaintiff also challenges the specifics of the misconduct findings, contending that the metal was too small to constitute a weapon and denying responsibility for the broken sprinkler head in his cell.  Plaintiff alleges that, in addition to the inappropriate sanctions and restitution ordered, the misconduct charge affected his parole.

3

Plaintiff also alleges that Defendant McMahon wrote the misconduct charge in retaliation for Plaintiff's heated objections to being placed in a dirty cell, in violation of the First Amendment. In addition, Plaintiff makes a conclusory allegation that Defendants were deliberately indifferent to his prison conditions, in violation of the Eighth Amendment.

Plaintiff seeks declaratory relief, together with compensatory and punitive damages.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.   Lack of Allegations—Defendant Ogle

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring

allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991).

Plaintiff fails to even mention Defendant Ogle in the body of his complaint.  His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").  The Court therefore will dismiss Plaintiff's complaint against Defendant Ogle.

## IV.   Respondeat Superior

Plaintiff alleges that each of the named Defendants is liable for the actions of the others, because all were acting in their capacities as employees of the MDOC and collectively ensured that he would be deprived of his rights.  Government officials may not be held liable for the unconstitutional conduct of their subordinates or colleagues under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881,

888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff therefore cannot demonstrate the liability of any Defendant for the conduct of another.

## V.      Judicial Immunity—Defendants Mohrman and Morris

Defendants Mohrman and Morris are hearing officers whose duties are set forth at Mich. Comp. Laws § 791.251 through § 791.255.  Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections.  *See* Mich. Comp. Laws § 791.251(e)(6).  Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed.  *See* Mich. Comp. Laws § 791.252(k).  There are provisions for rehearings, *see* Mich. Comp. Laws § 791.254, as well as for judicial review in the Michigan courts.  *See* Mich. Comp. Laws § 791.255(2).  Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges.  *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988).  As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers.  *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights).

Plaintiff's allegations against Defendants Mohrman and Morris are based solely on those Defendants' determinations in adjudicating the misconduct charge against Plaintiff. Accordingly, Plaintiff's claims against them are barred by judicial immunity.

## VI. Due Process

Plaintiff complains that he was deprived of due process when he was charged with and adjudicated of major misconduct violations for possessing a weapon and destroying state property. He contends that his misconduct conviction resulted in a 30-day loss-of-privileges sanction and influenced the Michigan Parole Board's decision to deny parole. Plaintiff also alleges that, following the hearing, he was improperly deprived of his property when the restitution amount was removed from his prisoner trust account.

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the

8

protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

Plaintiff's major misconduct charge and conviction affected a number of Plaintiff's liberty interests, but none of them fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate

to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

Under Michigan law, Plaintiff is not entitled to release on parole. In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Plaintiff has served his 22-year maximum sentence, he has no reasonable expectation of liberty. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's consideration of Plaintiff's misconduct conviction, therefore, implicates no federal right. In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

As to the second *Sandin* category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." Plaintiff received a sanction of 30 days' loss of privileges. The Supreme Court long has recognized that even confinement in administrative segregation—a sanction greater than the loss of privileges—"is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, segregation is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-13 (no liberty interest in two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481,

484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest). If segregation for 30 days or more is not atypical and significant, Plaintiff's lesser 30-day loss-of-privileges sanction necessarily is *not* atypical and significant. Thus, Plaintiff's sanction of loss of privileges did not trigger a right to due process.

Plaintiff also relies upon prison policies and prison manuals as the source of his right to due process. In other words, he contends that certain policies and prison manuals provide him with state-created rights by specifying requirements and procedures that prison officials must follow when charging a prisoner with misconduct or when investigating that misconduct.

Plaintiff's reliance is misplaced. As the Supreme Court stated in *Sandin*, using "mandatory language in prisoner regulations" as a source for interests protected by due process "stray[s] from the real concerns undergirding the liberty protected by the Due Process Clause." *Sandin*, 515 U.S. at 484. Prison regulations are "primarily designed to guide correctional officials in the administration of a prison." *Id.* at 482. They are not designed "to confer rights on inmates[.]" *Id.* Accordingly, the Court held that state-created interests "will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents or prison life." *Id.* (citations omitted). Plaintiff has not alleged that Defendants imposed such a restraint on him. Thus, he does not state a due process claim based on his loss of privileges.

Plaintiff next alleges that he was deprived of his property without due process when his account was charged $119.63 for the repair of the sprinkler head. Plaintiff's due process claim

is not barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986), because he does not allege that he was deprived of the property by a "random and unauthorized act" of a state employee.  Instead, he alleges that his property was taken pursuant to an authorized decision of an administrative law judge following a hearing.  Arguably, therefore, Plaintiff has alleged that he had a property interest in his prisoner funds.

Regardless, even if Plaintiff has properly alleged the loss of a protected property or liberty interest, he does not state a due process claim because it is clear that he received all the process due to him.  In *Wolff v. McDonnell,* 418 U.S. 539 (1974), the Supreme Court held that prison disciplinary proceedings implicating a property or liberty interest must provide the following minimum process:  (i) at least 24 hours of advance notice of the charges, (ii) the right to call witnesses and to present evidence in the inmate's defense, (iii) an impartial tribunal, and (iv) a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action.  *Id.* at 563-69.

The right to call witnesses or present evidence, however, is not absolute.  *Id.* at 566.  The United States Supreme Court explained:

> [W]e must balance the inmate's interest[s] against the needs of the prison, and some amount of flexibility and accommodation is required.  Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence.  Although we do not prescribe it, it would be useful for the Committee to state its reasons for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases.

*Id.*  Nevertheless, courts have restricted the use of confidential information in *Wolff*-type disciplinary hearings.  *Falkiewicz,* 271 F. Supp. 2d at 950 (citing *Ponte v. Real,* 471 U.S. 491, 499-500 (1985), and *Hensley v. Wilson*, 850 F.2d 269, 276-83 (6th Cir. 1988)).  Petitioner has not

13

alleged that any confidential informants were improperly used against him in his misconduct hearing.

Plaintiff's allegations and the documents attached to his complaint indicate that he received notice of the charges in the misconduct report. Plaintiff also had an adequate opportunity to call witnesses and present evidence. Plaintiff submitted his own four-page statement and the written statement of prisoner Peoples, and he was provided the chance to contest the other evidence at the misconduct proceeding. He received not one, but two, hearings, two hearing investigations, and an opportunity to respond before two independent and impartial hearing officers. Both hearing officers issued written decisions in misconduct hearing reports, identifying the evidence used to support their decisions. Plaintiff, in fact, was able to appeal his first negative decision to the circuit court, and he actually received a new hearing on remand.

Defendant Morris's hearing report, issued after remand, was particularly detailed. Morris described the evidence, as follows:

> Prisoner present. This is a rehearing ordered by Judge Richard Garcia of the 30th Judicial Circuit Court on 12/27/18. Misconduct report and hearing investigation read and reviewed with prisoner. Pleads not guilty to both charges. Hearing investigation consists of four pages of OTID offender profile; one page from hearing investigator Basal summarizing the video of the incident; one page from the charged prisoner; one page from prisoner Peoples; one page of photograph; one page of contraband removal record; one page of cell/room inventory; the original hearing report conducted by ALJ Mohrman; one page of request for rehearing response (denying a rehearing); two pages of request for rehearing from the charged prisoner; four pages from the charged prisoner as given to HI Demps for the rehearing; one page from HI Basal/S. Sundholm concerning the work orders submitted; one page of work order #6419; one page from HI Demps; the surveillance video, held confidential to prevent release of fixed cameral locations, limitations and capabilities. The contents are summarized for the prisoner. I find the prisoner's questions for C/O Baldini, E-block officer, former E=9 occupant, and C/O Ogle are not relevant as the answers would not prove or disprove any element of the charge. If the cell was dirty would not prove or disprove if the prisoner had possession of the sprinkler head deflectors. Further the video for the time C/O McMahon came to have him check the cell inventory sheet and the video showing all cell inspections are not relevant as they would not prove or disprove any element

14

of the charges.  The prisoner indicates at hearing that as soon as he got into the room, he asked to clean the cell because it was filthy.  He states that he and the officer had words and then the officer said he broke the sprinkler heads.  He states that the cell inventory was never given to him.  He states that the paperwork is falsified and the date is wrong on the restitution request.  He states that it wasn't clean and free of debris that there was garbage in there.  He had nothing further.  He was informed of the decision at the conclusion of the hearing.  Since this is a rehearing, the prisoner has already served sanctions and been ordered to pay restitution.

(Morris Hr'g Report, ECF No. 1-16, PageID.24-25.)  After reviewing the evidence, Defendant

Morris reached the following detailed conclusions:

Pursuant to PD 03.03.105, possession of a weapon is defined as an unauthorized possession of any item designed or intended to be used to cause or threaten physical injury to another person; or unauthorized possession of any strip, piece or chunk of hard material that can be used []as a weapon or in the creation of a weapon.  This Administrative Law Judge finds the statement of the reporting officer to be reliable, specific and persuasive.  ALJ finds that the prisoner was in possession of the sprinkler head deflectors, which are a hard strip of metal that could be used as weapons or in the creation of weapons.  The prisoner indicates that the cell was in terrible condition when he moved in on 5/15/18 and the cell inventory sheet was fabricated.  However, the cell inventory sheet shows when the prisoner moved in on 5/15/18, the sprinkler heads were intact, including the deflectors.  Upon his transfer from that cell on 5/15/18, the sprinkler heads were in need of replacement.  The prisoner calls into question the veracity of the cell inventory form.  However, I note that no work orders were submitted on cell E=0 for sprinkler heads until 5/16/18.  If the sprinkler heads were destroyed prior to the prisoner moving in the cell, it is likely that a work order would have been submitted prior to him being moved into that cell.  The work order was submitted on 5/16/1[8], the day after he left the cell.  I further note that officer McMahon heard the sound of metal hitting the floor of the base gallery.  When he inspected, he found a sprinkler deflector in the gutter of the unit-shower area.  When he made a round to check the condition of sprinkler heads, he found cell E=9 had both sprinkler head deflectors missing.  When officer Ogle reviewed the camera footage, it showed prisoner Fleming throwing something out of the cell at that time period when the metal hit the floor.  The video footage shows prisoner Fleming throwing something out his cell at 12:08:59 and his arm comes back into the cell at 12:09:01.  The item being thrown out of the cell has to be small as it is not visible on the camera.  However, his arm makes a clear throwing motion toward the shower area.  He claims the cell was trashed and he threw out garbage.  However, if it was trash, he would likely have had to throw out multiple pieces of trash and they would likely be visible on camera.  Even something as big as a balled up piece of paper is visible on camera.  The one item the prisoner threw was small and not able to be identified.  This would be consistent with the sprinkler head deflector, as the photograph of the item shows it to be small and metal.  I do not find the cell inventory to be fabricated.  I find the

prisoner was moved into the cell on 5/15/18 and the cell sprinkler heads were intact. When officer McMahon checked the sprinkler heads on his round (after finding it on the floor), he found E=9 to be missing. I do not find the statement of prisoner People's to be dispositive[.] He doesn't say who he got it from or what it came from. I find the cell inventory sheet and the maintenance request to be more reliable as it is definitively prisoner Fleming's cell. When the prisoner removed the sprinkler head deflectors, he had possession of a weapon as it was strip or piece of metal that was hard and could be used in the creation of a weapon or as a weapon. Thus, I find the prisoner had possession of the removed sprinkler head deflectors and threw one or both of them out of his cell. I find the prisoner guilty of (029) [possession of a weapon].

Per PD 03.03.105, destruction or misuse of property is any destruction, removal, alteration, tampering, or other unauthorized use of property. For the same foregoing reasons, I find the prisoner did remove the sprinkler head deflectors from his cell. The cell inventory shows the sprinkler heads were intact and in good condition when he moved in. Further, the only maintenance request for the sprinkler heads was completed on 5/16/18. First off, it is not likely that a prisoner is going to be moved into a cell with missing sprinkler heads. Second, the work order is dated the day after the prisoner was placed in the cell and supposedly removed the sprinkler head deflectors. The work order would have been submitted prior to that if some other prisoner that was in the cell before him had removed the deflectors. I find the prisoner guilty of (427) [destruction or misuse of property]. I note that the prisoner already served sanctions and paid restitution for his offense, so no further sanctions/restitution is ordered.

*Id.*

Plaintiff suggests that he should have had access to additional witnesses or information that Defendant Hearing Officer Basal deemed irrelevant, and he complains that Basal violated his due process rights by denying some of his evidentiary requests. There is no due process requirement that a hearings investigator must conduct his investigation in a certain way. *See Falkiewicz,* 271 F. Supp. 2d at 948. Therefore, Petitioner fails to state a due process claim as to the investigation of his major misconduct ticket.

Moreover, Plaintiff does not identify what any such information would have shown; he simply asserts that he had a right to any evidence he requested. Plaintiff, however, was fully able to challenge the authenticity of Defendant McMahon's checklist. However, he was unable to explain why such a checklist would *not* have been completed before he entered the cell. By its

16

terms, the inventory checklist must be conducted before a new prisoner is placed in a cell.  The checklist requires certification by the staff member that, prior to a new prisoner being placed in a cell, all items on the list were "<u>clean</u>, <u>secure</u>, <u>in proper working order</u> and completely inspected to be sure they are free from <u>contraband</u>."  (Cell-Inspection Checklist, ECF No. 1-11, PageID.20 (emphasis in original).)  Defendant McMahon signed the checklist, stating that he had conducted the inspection immediately before Plaintiff was placed in the cell.  In reviewing the credibility of the checklist, Defendant Morris relied on the routine nature of cell-inspection checklists noting that such an inventory would have been expected at the time Plaintiff entered the cell.  Morris further noted that no work order was placed before the time Plaintiff entered the cell, bolstering the conclusion that the inspection checklist was accurate.[1]

Plaintiff had ample opportunity to contest the charges, but his claims were simply not persuasive.  The statement by prisoner Peoples, to the effect that Peoples had thrown the item, was evidence considered by Defendant Hearing Officer Morris.  Morris determined, however, that Peoples' statement was unpersuasive, as the video camera showed Plaintiff throwing something out of his cell at the time reported by Defendant McMahon, who heard the item hit the floor and subsequently discovered it.  And Peoples failed to explain both how he had obtained the item or why he had thrown it.

Plaintiff argues, as he did in the misconduct proceedings, that the item should not have been considered a weapon.  But Plaintiff does not dispute that the item met the definition of a weapon under prison policy—a piece of metal that could be fashioned into a weapon, however small, or could be made part of a weapon by attaching it to a longer item that could serve as a

---

[1] The cell-inspection checklist also provides for a routine inventory of all listed items at the time an inmate departs the cell.  (Cell-Inspection Checklist, ECF No. 1-11, PageID.20.)  Plaintiff was in the cell for only a few hours.  The checklist form shows the condition of items both at the time of his arrival and at the time of his departure on May 15, 2018.

handle.  Moreover, Defendant Morris expressly concluded that Plaintiff's statement that he had thrown only trash out of his cell rendered his statement incredible; if the cell was filthy, it was unlikely that only a small piece of metal would be found in the hallway or be seen as it was thrown out of the cell, while no other trash was seen on video or found in the hallway.

Under the totality of the circumstances, Defendant Morris' written misconduct findings were issued after proper notice, were based on evidence that included Plaintiff's own statements and other evidence that fully supported the misconduct findings.  Plaintiff therefore received all of the process to which he was entitled; he simply disagrees with Defendant Simmons' weighing of the evidence and finding that Plaintiff was guilty of the offenses.  But Plaintiff is not entitled to a result with which he approves.  The right to due process protects Plaintiff's ability to *respond* to spurious charges.  It does not include the right to *prevent* or *prevail* on such charges. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*.") (emphasis in original).  Thus, for all the foregoing reasons, Plaintiff does not state a procedural due process claim.

## VII.    Retaliation

Plaintiff contends that Defendant McMahon fabricated the cell-inventory checklist in order to support a false misconduct charge, which McMahon allegedly issued to retaliate against Plaintiff for complaining about the dirty cell.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a

18

person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's retaliation claim fails for at least two reasons. First, Plaintiff's claim fails at the first step of the *Thaddeus-X* standard, because Plaintiff's allegations and admissions demonstrate that he was not engaged in protected conduct. Second, his claim is precluded by the finding of guilt on his major-misconduct charges.

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741). Thus, Plaintiff had a right to raise a complaint about the condition of his cell to Defendant McMahon.

However, by his own admission, the manner in which Plaintiff raised his complaint deprived it of its protected status.  According to Plaintiff's own affidavit, he "got into a very heated verbal disrespectful dispute" with Defendant McMahon.  (Pl.'s Aff., ECF No. 1-1, PageID.9.)  Behavior that violates an MDOC Policy Directive governing prisoner misconduct is not protected conduct.  *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (holding that a prisoner's act of calling the hearing officer a "foul and corrupt bitch" was not protected conduct because it fell within the definition of insolence).  *See also Caffey v. Maue*, 679 F. App'x 487 (7th Cir. Feb. 15, 2017) (holding that an inmate's name-calling of guards (calling them unprofessional) was a challenge to the guards' authority that was not protected by the First Amendment); *Felton v. Huibregtse*, 525 F. App'x 484, 487 (7th Cir. 2013) (holding that the use of disrespectful language was not protected conduct) (citing cases); *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 858, 864 (5th Cir. 2004) (concluding that an inmate who accused a chaplain of theological errors during a religious service had engaged in an unprotected challenge to institutional authority).  Plaintiff's admission to having a "heated" argument and being "disrespectful" to McMahon unquestionably falls within the definition of insolence and, as such, is not protected conduct.  *See* MDOC Policy Directive 03.03.105, Attach. B (listing Class-II misconducts, including insolence).  Plaintiff's admitted conduct therefore was not protected by the First Amendment.

Second, even if Plaintiff could demonstrate that he was engaged in protected conduct, his retaliation claim is barred by the doctrine of preclusion.  A prisoner's claim that he was falsely accused of a major misconduct is barred where there has been a finding of guilt.  *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action).

20

However, as the Sixth Circuit subsequently qualified in *Roberson v. Torres*, 770 F.3d 398 (6th Cir.

2014), not every factual finding is entitled to preclusive effect.  Instead,

> the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so—not just in theory, but in practice. [*Peterson*, 714 F.3d] at 916-17.  It likewise turns on the court's "sense of justice and equity," *Blonder-Tongue Labs., v. Univ. of Ill. Found.*, 402 U.S. 313, 334 (1971), which may require a case-by-case analysis of surrounding circumstances.

*Roberson*, 770 F.3d at 404-05.

In *Maben*, 887 F.3d 252, the Sixth Circuit further clarified the limitations of the

preclusion doctrine, as follows:

> To determine whether we must give preclusive effect to "factfinding from Michigan prison hearings," we look to four requirements, all of which must be met: (1) the state agency "act[ed] in a 'judicial capacity'"; (2) the hearing officer "resolved a disputed issue of fact that was properly before it"; (3) the prisoner "had an adequate opportunity to litigate the factual dispute"; and, (4) if these other three requirements are met, we must "give the agency's finding of fact the same preclusive effect it would be given in state courts."

*Maben*, 887 F.3d at 259 (quoting *Peterson*, 714 F.3d at 911-13 (6th Cir. 2013) (additional internal

citation and quotation marks omitted)).  The *Maben* court expressly limited the *Peterson/ Roberson*

preclusion principle to determinations made in major misconduct hearings, such as those

conducted in the instant case.  *Id.* at 261.  And the court cautioned that courts applying the doctrine

must "'give particular attention to the fairness and accuracy of the factual findings made by the

major-misconduct hearing officer.'"  *Id.* at 259 (quoting *Roberson*, 770 F.3d at 405).

The first three steps of the preclusion test are met here.  As discussed at length in

the prior section, Plaintiff had two Class-I, major-misconduct hearings before administrative

hearing officers in formal hearings conducted by the agency acting in a judicial capacity.  *Maben*,

887 F.3d at 259; *Peterson*, 714 F.3d 917; *see also* Mich. Comp. Laws §§ 791.251-791.255 (setting

forth the requirements for disciplinary hearings and the qualifications of hearing officers).  At his

hearings, Plaintiff actually raised his current claim that Defendant McMahon fabricated both the evidence and the misconduct charge.  In fact, Plaintiff's entire defense to the charge rested on the claim that McMahon had fabricated the charge against him and fabricated the cell-inventory sheet as evidence.  Finally, the hearing officer, Defendant Morris, expressly rejected Plaintiff's claim that McMahon had fabricated the evidence against Plaintiff, based both on the credibility of the officer and the other evidence in the case:  a video showing that Plaintiff had thrown something out of his cell at the relevant time, toward the showers; the sprinkler deflector was found in the shower gutter; a cell-inventory sheet completed two hours before the incident that would typically have been created at a time a new prisoner was being placed in the cell; the cell-inventory sheet showed that the sprinkler head was intact at that time, but was found damaged a few hours later; the absence of an earlier request for maintenance; the fact that the sprinkler head had to be replaced; the lack of credibility in prisoner Peoples' claim of responsibility, because it lacked detail about where he obtained the item and the reason it was thrown; and the lack of credibility in Plaintiff's claim that he threw trash out of his cell, though nothing else was found in the hallway.

Because the first three requirements of *Maben* have been met, the hearing officer's finding of guilt must be granted preclusive effect.  Plaintiff's retaliation claim, therefore, fails to state a claim.

## VIII.   Eighth Amendment

Plaintiff makes a conclusory claim that the circumstances described in his complaint deprived him of his rights under the Eighth Amendment.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."

*Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Plaintiff does not specify the conditions he claims violated the Eighth Amendment. To the extent he alleges that he lost privileges as a result of the misconduct convictions, his allegations do not rise to the level of an Eighth Amendment violation. The Supreme Court has held that even placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. 337, 347 (1981); *see also Jones v. Waller*, No. 98-5739, 1999

WL 313893, at *2 (6th Cir. May 4, 1999).  Plaintiff was subjected to a lesser sanction than segregation.  Although it is clear that Plaintiff was denied certain privileges as a result of his loss of privileges, he does not allege or show that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges cannot establish an Eighth Amendment violation.  *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).  As a result, Plaintiff fails to state an Eighth Amendment claim against Defendants for his sanction of loss of privileges.

To the extent that Plaintiff alleges that he was placed in a dirty cell, he also fails to state an Eighth Amendment claim.  Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency.  *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir.  2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).

At most, Plaintiff alleges that he was housed in a dirty cell for a few hours.  Such allegations support a conclusion that he suffered only temporary inconveniences.  As a consequence, Plaintiff fails to state an Eighth Amendment claim based on the condition of his cell.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C.

§ 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   July 17, 2020                              /s/ Paul L. Maloney
                                                    Paul L. Maloney
                                                    United States District Judge